*763
 
 Opinion
 

 KINGSLEY, J.
 

 California Insurance Guarantee Association (CIGA) filed a complaint for declaratory relief against various defendants, including the present appellants—Dr. Leon Trunk and his professional corporation. Triangle Medical Group, Inc. Dr. Trunk and his corporation filed an answer and a cross-complaint against CIGA’s demurrer to the other causes of action. This appeal is against Orr only and the parties have argued only the order as it relates to the first two causes of action in the cross-complaint against him.
 
 [1]
 

 Appellant Trunk is a physician and his professional corporation was Triangle. CIGA is an unincorporated association created by statute (Ins. Code, § 1063 et seq.) whose function and purpose is to provide reinsurance coverage for insolvent insurance companies operating in this state. Respondent Orr is an employee of CIGA. Appellants had been sued for professional negligence and had previously purchased a professional liability insurance policy from Allstar Corporation. Allstar undertook to defend Dr. Trunk’s malpractice case and during the pendency of the malpractice case, Allstar became insolvent. CIGA then retained the same counsel to defend appellants. A mandatory settlement conference was held, and appellants received notice that CIGA would not continue to provide a defense in the malpractice action, nor would it pay any money if a judgment were entered against appellants.
 

 Appellants alleged in their first cause of action that respondents breached an implied duty to deal in good faith, a breach of duty which they claim is set forth in Insurance Code section 1063.2. Orr demurred on the ground that the implied covenant of good faith and fair dealing must arise out of a contractual relationship and that appellants did not allege any contractual relationship with Orr but only that Orr was an agent and employee of CIGA. Orr argued that there is no implied duty of good faith between appellants and Orr and that also Orr is not liable for sums in excess of the face amount of the policy under Insurance Code section 1063.12, subdivision (a).
 

 Appellants pleaded a second cause of action for intentional infliction of emotional distress. Appellants pleaded that respondent’s acts were
 
 *764
 
 intentional, malicious, and calculated to cause Trunk to suffer humiliation and that the defendant knew that the acts would cause emotional distress. Appellants alleged that respondent’s conduct was outrageous, that they were forced to hire their own attorneys to defend the malpractice action, and that, as a proximate result of the conduct, Dr. Trunk suffered the mental distress.
 

 Orr responded that there was no legal duty on his part to provide a defense, that his conduct was not outrageous, and that there was no duty between appellants and Orr.
 

 I
 

 Appellants’ first cause of action is for breach of the duty of good faith and fair dealing. All parties appear to agree that the tort of breach of implied covenant of good faith and fair dealing that arises out of a contractual relationship is not available to appellants herein. That is because “. . . this duty, the breach of which sounds in both contract and tort, is imposed because ‘[t]here is an implied covenant of good faith and fair dealing in every contract [including insurance policies] that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.’ ”
 
 (Gruenberg
 
 v.
 
 Aetna Ins. Co.
 
 (1973) 9 Cal.3d 566, 573 [108 Cal.Rptr. 480, 510 P.2d 1032].) Since Orr is not a party to any insurance contract, appellants do not claim that he is bound by any implied covenant arising out of an insurance contract.
 

 However, appellants rely not on a contractual duty of good faith and fair dealing, but on statutoiy duty of good faith. Appellants rely on Insurance Code sections 1063.2 and 1063.12, subdivision (b). Section 1063.2 imposes on CIGA the duty of paying and discharging covered claims.
 
 [2]
 

 
 *765
 
 Section 1063.12, subdivisions (a), (b) and (c) read as follows: “(a) The association, its member insurers, and its officers, directors, agents or employees of the association, or its member insurers, shall under no circumstances be liable for any sum in excess of the face amount of any
 
 *766
 
 policy of insurance of the insolvent insurer, as defined under subdivision (c) of Section 1063.1 of this article and the costs of administration and the costs of loss adjustment, investigation and defenses relating to claims thereunder.
 

 “(b) Any person or member made a party to any action, suit or proceeding because such person or member served on the board of governors or on a committee or was an officer or employee of the association shall be indemnified by the association against all costs (including the amounts of judgments, settlements, fines or penalties) and expenses incurred in connection with such action, suit or proceeding; provided, however, such indemnification shall not be provided on any matter in which the person or member shall be finally adjudged in any such action, suit or proceeding to
 
 have committed a breach of duty involving gross negligence, bad faith, dishonesty, willful misfeasance or reckless disregard of the responsibilities of his office.
 
 In the event of settlement of a matter before adjudication, indemnification shall be provided only if the association is advised by independent counsel that the person or member to be indemnified did not in counsel’s opinion commit such a breach of duty.
 

 “(c) The costs and expenses of such indemnification shall be prorated and paid for by the members in the same manner as provided in the plan of operations for the proration of premiums.” (Italics added.) Appellants argue that section 1063.12, subdivision (b) creates a cause of action against members of the board or officers or employees, for breach of duty by such persons where the breach involves bad faith.
 

 We do not agree with appellants’ position that the purpose of section 1063.12, subdivision (b) is to create such a cause of action. Section 1063.12, subdivision (b) simply states that in the event an employee or member is made a party to the suit, he will not be indemnified where he has acted in bad faith or has committed a breach of duty. The code section does not by its language create a cause of action for breach of duty but simply deals with the subject of indemnification of certain persons.
 

 Our examination of the histoiy of these code sections tends to support the view that no cause of action is created by this statute.
 

 
 *767
 
 Section 1063.12, as it was originally written in 1969, read as follows: “Neither the association, its member insurers or any officer, director, agent, or employee of the association, or its member insurers, shall be liable for any sum in excess of the face amount of any policy of insurance of the insolvent insurer, as defined under subdivision (c) of section 1063.1 of this article.” The 1970 amendment
 
 [3]
 
 rewrote the section to read as it now appears. Thus section 1063.12 was amended in 1970 to add in subdivision (a) the term “under no circumstances. . . .” This emphatic language shows a purpose on the part of the Legislature to make it absolutely clear that CIGA and its members were not to be liable for a sum in excess of the face amount of the policy. This new language is inconsistent with appellants’ suggestion that a cause of action making employees liable for any sum beyond the face amount of the statute was created by subdivision (b) of the statute.
 

 However, although section 1063.12, subdivision (a) limits the liability of members and employees to the face amount of any policy of the insurance under any circumstances, and also has some additional language in subdivision (b) in the 1970 amendment which calls for the nonindemnification of members and employees found to have committed a breach of duty involving bad faith or dishonesty. However, section 1063.12, subdivision (b) does not state that there is a cause of action for breach of duty due to an employee’s bad faith, dishonesty, etc., nor is that the clear import of the language. The section merely says that if a person, member or employee is made a party to the suit and if the person may be adjudged to have committed breach of duty involving bad faith, then he has no right to indemnification in such a case. Although the language states that there may be “judgments, settlements, fines or penalties,” against such persons, the language in the statute does not in and of itself create a cause of action for bad faith breach of duty. The language of section 1063.12, subdivision (b) deals with the employee’s rights to indemnification and nothing more.
 

 The statute, as we read it, without supplying additional words, does not actually create a new cause of action against a member or employee for a bad faith breach of duty. The statute simply calls for indemnification of employees where there is no breach of duty.
 

 
 *768
 
 Further, Barger in 45 State Bar J. 475, 482, wrote that the purpose of section 1063.12 was to relieve the association, its member insurers, or any officer, director, agent or employee of the association, or the member insurers, from provision of those cases awarding damages in excess of policy limitations of insolvent insurers. That view is entirely consistent with our holding that there is no new cause of action.
 

 II
 

 For the second cause of action, appellants allege that respondent’s conduct gives rise to a cause of action for intentional infliction of emotional distress. An insurance company may be liable for the tort of intentional infliction of emotional distress for not providing the insured with what the insured is entitled to under the policy where there is (1) outrageous conduct by the defendant; (2) the defendant’s intention of causing or reckless disregard of the probability of causing emotionally severe or extreme emotional distress; (3) the plaintiff’s suffering severe or extreme emotional distress; and (4) actual or proximate causation of the emotional distress by the defendant’s outrageous conduct.
 
 (Fletcher
 
 v.
 
 Western National Life Ins. Co.
 
 (1970) 10 Cal.App.3d 376, 394 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].)
 

 In the case at bench, although the pleading alleges the CIGA breach of its duty was “extreme and outrageous conduct,” and describes the mental, emotional and physical distress which followed, it does not contain any factual allegations identifying the particular acts or circumstances which distinguish the tort of outrageous conduct from an ordinary nonperformance of a statutory duty owed to the doctor by the cross-defendant CIGA. Lacking any such specification, the cross-complaint does no more than to allege that Orr, acting as agent for CIGA, carried out his duties to his employer. That the employer may have been in the wrong in authorizing Orr’s actions does not, without a showing of additional facts, impose any liability on Orr.
 
 [4]
 

 The demurrer to the second cause of action was sustained without leave to amend. Plaintiffs’ briefs do not suggest that an opportunity to
 
 *769
 
 amend would enable them to supply the missing factual detail essential to stating a cause of action. Absent such a showing, we deem that plaintiffs have elected to stand on their pleading as filed.
 

 The judgment (order of dismissal) is affirmed insofar as it dismisses the cross-complaint as to respondent Orr.
 

 Files, P. J., and Alarcon, J., concurred.
 

 [1]
 

 Since the trial court sustained demurrers by CIGA only as to one cause of action, there is no appealable judgment, and no appeal, by CIGA. We deem the appeal abandoned insofar as the third and fourth causes of action against Orr are concerned and affirm the judgment as to those causes of action.
 

 [2]
 

 Section 1063.2 reads as follows: “(a) The association shall pay and discharge covered claims and in connection therewith pay for or furnish loss adjustment services and defenses of claimants when required by policy provisions. It may do so either directly by itself or through a servicing facility or through a contract for reinsurance and assumption of liabilities by one or more member insurers or through a contract with the liquidator, upon terms satisfactory to the association and to the liquidator, under which payments on covered claims would be made by the liquidator using funds provided by the association. “(b) The association shall be a party in interest in all proceedings involving a covered claim, and shall have the same rights as the insolvent insurer would have had if not in liquidation, including but not limited to the right to: (1) to appear, defend, and appeal a claim in a court of competent jurisdiction; (2) to receive notice of, investigate, adjust, compromise, settle, and pay a covered claim; and (3) to investigate, handle, and deny a
 
 *765
 
 noncovered claim. The association shall have no cause of action against the insureds of the insolvent insurer for any sums it has paid out, except as provided by this article. “(c) (1) If damages against uninsured motorists are recoverable by the claimant from his own insurer, such damages recoverable shall be a credit against a covered claim payable under this article. If damages against an insured who is not a resident of this state are recoverable by a claimant who is a resident of this state, in whole or in part, from any insolvency fund or its equivalent in the state where the insured is a resident, such damages recoverable shall be a credit against a covered claim payable under this article. A member insurer may recover in subrogation from the association only one-half of any amount paid by such insurer under uninsured motorist coverage for bodily injury or wrongful death (and nothing for a payment for anything else), in those cases where the injured person insured by such an insurer has proceeded under his uninsured motorist coverage on the ground that the tortfeasor is uninsured as a result of the insolvency of his liability insurer (an insolvent insurer as defined in this article), provided that such member insurer shall waive all rights of subrogation against such tortfeasor. Any amount paid a claimant in excess of the amount authorized by this section may be recovered by action brought by the association. “(2) Any claimant having collision coverage on a loss which is covered by the insolvent company’s liability policy shall first proceed against his collision carrier. Neither that claimant nor the collision carrier, if it is a member of the association, shall have the right to sue or continue a suit against the insured of the insolvent insurance company for such collision damage. “(d) The association shall receive the benefit of any amounts recoverable on reinsurance contracts or treaties entered into by the insolvent insurer which cover any of the liabilities incurred by the insolvent insurer in the category or categories involved provided such benefits shall be limited to payments upon or loss adjustment expenses or defense costs actually paid out of the association (including defense costs, if any, unpaid at the date of insolvency) on account of claims covered in such contracts or treaties. The commissioner, as liquidator, shall receive the benefit of any such reinsurance recoverable to the extent of payments on claims, loss adjustment expenses or defense costs made prior to the order of liquidation. “(e) The association shall continue coverage for covered claims under all insurance policies of the insolvent insurer that were in force on the date the liquidator was appointed until the insurance policy has expired in accordance with its terms, or has been replaced by the insured, or canceled at the insured’s request, or has been canceled by the association as provided in this article. “(f) The association shall have authority to cancel insurance policies of the insolvent insurer by mailing or delivering to the insured at the last known address within this state a written notice of cancellation at least 10 days prior to the effective date of such cancellation, notwithstanding any statute or policy provision to the contrary. “(g) ‘Covered claims’ shall not include any judgments against or obligations or liabilities of the insolvent insurer or the commissioner, as liquidator, or otherwise resulting from alleged or proven torts, nor shall any default judgment against the insolvent insurer, or against the insured of the insolvent insurer, be binding against the association. “(h) ‘Covered claims’ shall not include adjustment expense and attorney’s fees incurred by the insolvent insurer prior to the appointment of a liquidator. The deductible provided for in paragraph (5) of subdivision (c) of Section 1063.1 shall apply to each person for each accident for which he makes a claim.”
 

 [3]
 

 Section 1063.12, subdivision (a) reads as follows: “(a) The association, its member insurers, and its officers, directors, agents or employees of the association, or its member insurers shall
 
 under no circumstances
 
 be liable for any sum in excess of the face amount of any policy of insurance of the insolvent insurer, as defined under subdivision (c) of Section 1063.1 of this article and the costs of administration and the costs of loss adjustment, investigation and defenses relating to claims thereunder.” (Italics added.)
 

 [4]
 

 Plaintiffs rely on
 
 Fletcher
 
 v.
 
 Western National Life Ins. Co.
 
 (1970) 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286], and
 
 Mustachio
 
 v.
 
 Ohio Farmers Ins. Co.
 
 (1975) 44 Cal.App.3d 358 [118 Cal.Rptr. 581]. Except insofar as those cases recognize the existence of the tort, neither is helpful to plaintiff here. Both were appeals from judgments after trial. In
 
 Fletcher,
 
 the defendant conceded that the evidence did show outrageous conduct; in
 
 Mustachio
 
 the only issue on appeal was the sufficiency of the damage award. Neither case dealt with a pleading as insufficient as the one before us.