117 Cal.App.3d 729 (1981)
173 Cal. Rptr. 35
CALIFORNIA UNION INSURANCE COMPANY, Plaintiff, Cross-defendant and Appellant,
v.
CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, Defendant, Cross-complainant and Appellant; CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Cross-defendant and Respondent.
Docket Nos. 57822, 59316.
Court of Appeals of California, Second District, Division Five.
April 3, 1981.
*730 COUNSEL
Bolton, Hemer & Dunn and Donald H. Moore for Plaintiff, Cross-defendant and Appellant.
Greenberg, Bernhard, Weiss & Karma, Arthur Karma, Ralph R. Blair and Stanley R. Coleite for Defendant, Cross-complainant and Appellant.
Clausen, Harris & Campbell and Lon Harris for Cross-defendant and Respondent.
*731 OPINION
ASHBY, J.
Appellants Central National Insurance Company of Omaha (Central) and California Union Insurance Company (Cal Union) appeal from orders of dismissal following the sustaining of demurrers to their complaints against respondent California Insurance Guarantee Association (CIGA).
CIGA is a compulsory association of insurers created by statute (Ins. Code, § 1063 et seq.)[1] whose purpose is to provide insurance against loss arising from the failure of an insolvent insurer to discharge its obligations under its insurance policies. (§§ 1063, subd. (a), 119.5; see Barger, California Insurance Guarantee Association (1970) 45 State Bar. J. 475, 482; Trunk v. Orr (1979) 94 Cal. App.3d 761, 763 [156 Cal. Rptr. 662].) The trial court held that appellant insurers had stated no cause of action against CIGA.[2]
Central, Cal Union, and Signal Insurance Company (Signal) all wrote policies of insurance against legal malpractice by a certain law firm (the insured). Central's policy, on an "occurrence" basis, was for the policy years 10-1-69 to 10-1-71. Signal's policy, on an occurrence basis, was for the policy years 10-1-71 to 10-1-73. Cal Union's policy, on a "claims made" basis, was for the policy years 10-1-73 to 10-1-76. In January 1974, former clients of the insured filed a malpractice action which was defended by Central. Judgment was rendered against the insured in May 1976 for $337,000. Central requested Signal and Cal Union to contribute to the judgment but they refused, except that Signal contributed approximately $24,000. Central then caused the entire judgment to be satisfied, intending to pursue its own remedies against Signal and Cal Union.
In January 1977, Cal Union filed a complaint for declaratory relief against Signal and Central. Cal Union sought a declaration that it had no liability on its policy because it was never notified of the action until the verdict was returned.
In November 1977 Central cross-complained against Signal and Cal Union. Central claimed that although it had caused the judgment to be *732 satisfied, actually none of the alleged errors or omissions of the insured occurred during Central's policy period, and that Signal and Cal Union were liable to Central for the amounts paid by Central on the judgment.
On January 10, 1978, Signal was adjudicated to be insolvent and the Insurance Commissioner was appointed to liquidate the affairs of Signal. (§ 1011 et seq.) An order restraining prosecution of proceedings against Signal was issued.
Central and Cal Union amended their cross-complaint and complaint in order to allege a cause of action against CIGA in place of a cause of action against Signal. Central contends that its claim against Signal is a covered claim (§ 1063.1, subd. (c)(1)) which CIGA is obligated to pay (§ 1063.2, subd. (a)). Central alleges that questions of coverage of the three insurance policies should have been negotiated and settled by the insurers, but since Signal and Cal Union refused, Central satisfied the full judgment to protect the insured from execution on its property and to protect Central from any possible claim of bad faith failure to settle. Central also alleges Signal violated an agreement with Central under which Signal was obligated to pay seven-eighths of the judgment against the insured. Central contends that if Central had not satisfied the judgment, the insured would have had a claim against Signal and CIGA; that by Central's payment of the judgment it is subrogated to the rights of the insured under the Signal and Cal Union policies and against CIGA; and further that Central holds an equitable right against CIGA for reimbursement of monies expended in satisfaction of the judgment. Central seeks declaratory relief and damages against CIGA.
Cal Union did not pay out any money in satisfaction of the malpractice judgment and therefore does not claim monetary damages against CIGA, but Cal Union does seek a declaration that it has no liability to any of the parties. Insofar as CIGA is concerned, the thrust of Cal Union's complaint seems to be that if Cal Union should have any cause of action against Signal, it would be a covered claim against CIGA.
Central and Cal Union also seek a declaration that if their claims are not "covered claims" against CIGA because they are specifically excluded by section 1063.1, subdivisions (c)(4) and (c)(7), then those sections are unconstitutional.

*733 DISCUSSION
(1) The trial court correctly held that appellants' claims are not covered claims against CIGA because they are specifically excluded by section 1063.1, subdivisions (c)(4) and (c)(7), and that such exclusions are not unconstitutional.
The definition of "covered claims" in section 1063.1, subdivision (c)(1),[3] is modified by subdivisions (c)(4) and (c)(7) to exclude a claim of the type made by appellants. Those sections provide: "(4) `Covered claims' shall not include any obligations to insurers, insurance pools, or underwriting associations, except as otherwise provided in this chapter. [¶] (7) `Covered claims' shall not include (a) any claim to the extent it is covered by any other insurance of a class covered by the provisions of this article available to the claimant nor (b) any claim by any person other than the original claimant under the insurance policy in his own name, his executor, administrator, guardian or other personal representative or trustee in bankruptcy and shall not include any claim asserted by an assignee or one claiming by right of subrogation, except as otherwise provided in this chapter."
Appellants are insurers and the claims they seek are "obligations to insurers." (§ 1063.1, subd. (c)(4).) Appellants are not "the original claimant under the insurance policy in his own name." (§ 1063.1, subd. (c)(7).) Appellants claim an equitable right of subrogation and the statute is clear that covered claims "shall not include any claim asserted by an assignee or one claiming by right of subrogation, except as otherwise provided in this chapter." (§ 1063.1, subd. (c)(7).)[4]
*734 Shortly after the creation of the association in 1969, the then Commissioner of Insurance wrote, "The creation of the California Insurance Guarantee Association provides the insured public of the State of California with an additional protection by which those persons injured now have the assurance that their claims will be paid, notwithstanding the fact that their claims may be against an insolvent company. Granted, the record in California of insolvencies is exemplary, but this record should not deter the State from protecting even a minute segment of the public from losses occasioned by insurance company insolvencies. The creation of the California Insurance Guarantee Association fulfills this purpose." (Barger, supra, 45 State Bar J. at p. 482.)
The Legislature chose to provide a limited form of protection for the public, not a fund for the protection of other insurance companies from the insolvencies of fellow members. In comments upon a similar provision, excluding from coverage the claims of other insurers by subrogation or otherwise, the drafters of the National Association of Insurance Commissioners Insurance Guaranty Association Model Bill stated, "The subcommittee does not feel that coverage should be extended to elements of the insurance industry which know or reasonably can be expected to know the financial condition of various companies."
The Legislature's choice to provide coverage only to the original claimant under the policy is rational and constitutional. "`The Legislature is not bound, in order to adopt a constitutionally valid statute, to extend it to all cases which might possibly be reached, but is free to recognize degrees of harm and to confine its regulation to those classes of cases in which the need is deemed to be the most evident."' (In re Ricky H. (1970) 2 Cal.3d 513, 521-522 [86 Cal. Rptr. 76, 468 P.2d 204]; Norsco Enterprises v. City of Fremont (1976) 54 Cal. App.3d 488, 497-498 [126 Cal. Rptr. 659].)
The orders of dismissal are affirmed.
Kaus, P.J., and Stephens, J., concurred.
The petition of appellant Central National Insurance Company for a hearing by the Supreme Court was denied May 27, 1981.
NOTES
[1] Unless otherwise indicated all section references hereafter are to the Insurance Code.
[2] The trial court sustained, without leave to amend, CIGA's demurrers to Central's second amended cross-complaint and Cal Union's fourth amended complaint.
[3] Section 1063.1, subdivision (c)(1), provides: "`Covered claims' means the obligations of an insolvent insurer, (i) imposed by law and arising out of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; (iii) which are presented as a claim to the liquidator in this state or to the association on or before the last date fixed for the filing of claims in the domiciliary liquidating proceedings; (iv) which were incurred prior to, on, or within 30 days after the date the liquidator was appointed; (v) for which the assets of the insolvent insurer are insufficient to discharge in full; (vi) in the case of a policy of workers' compensation insurance, to provide workers' compensation benefits under the Workers' Compensation Law of this state and (vii) in the case of other classes of insurance if such policy is issued to a resident of this state or claim against an insured thereunder is made by a resident of this state."
[4] Appellants erroneously contend that section 1063.9, subdivision (b), otherwise provides. That subdivision of the section on "[t]he operation of the association" (§ 1063.9, subd. (a)) merely provides: "Any member insurer aggrieved by an action or decision of the association may appeal to the commissioner within 30 days after the action or decision of the association and after exhaustion of administrative remedies may seek court relief as provided in Section 12940." Nothing in subdivision (b) purports to modify the definition of covered claims.