**WASHINGTON INSURANCE GUARANTY ASSOCIATION, Plaintiff–Appellant,**

v.

**William R. KEETER, et al., Defendants–Appellees.**

No. 87–8352.

United States Court of Appeals, Eleventh Circuit.

June 20, 1988.

Gene A. Major, Mark D. Belcher, Atlanta, Ga., for plaintiff-appellant.

T. Cullen Gilliland, and John B. Austin, Gray, Gilliland & Gold, Atlanta, Ga., for Hamedani.

John S. D'Orazio, Finch, McCranie, Brown & Thrash, Atlanta, Ga., for Keeter.

Before KRAVITCH, Circuit Judge, HENDERSON\*, and HENLEY\*\*, Senior Circuit Judges.

\* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

**PER CURIAM:**

The Washington Insurance Guaranty Association ("WIGA") appeals from an order entered by the United States District Court for the Northern District of Georgia denying its motion for summary judgment and granting a motion for summary judgment in favor of Canal Insurance Company ("Canal") and Akbar M. Hamedani, individually and d/b/a Brothers Trucking. We affirm.

On October 18, 1983, William and Rachel Keeter were driving southbound on Interstate 75 in Cobb County, Georgia. Following them was a tractor/trailer operated by Akbar M. Hamedani, en route from Connel, Washington to Cordele, Georgia. As a tow truck, driven by David Kuykendall,[1] entered the highway, a tire from the vehicle in tow came loose and rolled across the highway directly in front of the Keeters's automobile. Keeter took evasive action to avoid the tire, causing his automobile to spin into the path of the tractor/trailer. Hamedani swerved to avoid a collision. However, his tractor/trailer slid sideways and tipped over on the Keeter vehicle.

At the time of the accident, the Keeters were insured by Nationwide Insurance Company. Their insurance policy provided for uninsured motorist coverage in the amount of $10,000.00 per person or $20,-000.00 per occurrence for bodily injury and $10,000.00 per occurrence for property damage. The Keeters applied for and have been paid the limits of the uninsured motorist coverage in their policy.

The tractor-trailer was apparently owned by Hamedani d/b/a Brothers Trucking. Brothers Trucking was insured by Canal. Brothers Trucking leased the tractor/trailer to Tom Durkin d/b/a Tom Durkin Trucking pursuant to a trip lease agreement. It is undisputed that the vehicle was being used pursuant to the trip lease at the time of the collision. Durkin, a Washington resident, was insured by Early Ameri-

1. The district court entered a default judgment against Kuykendall for failure to appear or otherwise defend. Kuykendall is not involved in this appeal.

can Insurance Company ("Early American"). Early American, an Alabama corporation, went into receivership in January of 1985. According to the terms of his policy, Durkin's insurance with Early American was "primary," while Brothers Trucking's policy with Canal provided that "[i]n the event the automobile described in this policy is being used or maintained pursuant to any lease ... the insurance afforded the named insured shall be excess insurance over any other insurance."

In 1971, the Washington State Legislature created the WIGA pursuant to R.C.W. § 48.32.010 *et seq.* ("Washington Act"), Washington's version of the Model Insurance Guaranty Association Act. The WIGA is designed in part to "provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer...." R.C.W. § 48.32.010.[2] To accomplish these goals, R.C.W. § 48.32.060(1) provides that:

> The association shall:
>
> (a) Be obliged to the extent of the covered claims existing prior to the order of liquidation and arising within thirty days after the order of liquidation, or before the policy expiration date if less than thirty days after the order of liquidation, or before the insured replaces the policy or on request effects cancellation, if he does so within thirty days of the order of liquidation, but such obligation shall include only that amount of each covered claim which is in excess of one hundred dollars and is less than three hundred thousand dollars. In no event shall the association be obligated to a policyholder or claimant in an amount in excess of the face amount of the policy from which the claim arises.
>
> (b) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent

insurer as if the insurer had not become insolvent.

R.C.W. § 48.32.030(4) defines "covered claims" as follows:

> 'Covered claim' means an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer after the first day of April, 1971 and (a) the claimant or insured is a resident of this state at the time of the insured event; or (b) the property from which the claim arises is permanently located in this state. 'Covered claim' shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise: *Provided,* That a claim for any such amount asserted against a person insured under a policy issued by an insurer which has become an insolvent insurer, which, if it were not a claim by or for the benefit of a reinsurer, insurer, insurance pool, or underwriting association, would be a 'covered claim' may be filed directly with the receiver of the insolvent insurer, but in no event may any such claim be asserted in any legal action against the insured of such insolvent insurer.

The WIGA is a non-profit involuntary association of qualified insurers, such as Canal and Early American, doing business in the State of Washington. R.C.W. § 48.32.040. It is capitalized by assessments of its members based on a proportion of their annual net direct written premiums. R.C.W. § 48.32.060(1)(c).

On December 21, 1983, the Keeters filed suit in State Court of Cobb County, Georgia against Kuykendall, Hamedani and Tom Durkin Trucking Company. Due to Early American's insolvency, the WIGA was called upon to defend the underlying action and to satisfy any judgment that may be rendered against Tom Durkin or Tom Durkin Trucking to the extent of the

---

**2.** As the Washington Supreme Court stated in *Prutzman v. Armstrong,* 90 Wash.2d 118, 579 P.2d 359, 361 (1978), "[t]he function of the WIGA is to step into the shoes of an insolvent insurer to protect residents of the state affected by the insolvency...."

limits of liability under R.C.W. § 48.32.060(1)(a).

The WIGA filed this action in the district court for declaratory relief on December 16, 1985, seeking a determination of its liability, if any, for satisfaction of a judgment obtained by the Keeters in the underlying tort action. The WIGA contends that under the Washington Act, Canal is the primary insurer, while Canal contends that the WIGA is primarily liable. The case was submitted to the district court on cross-motions for summary judgment. On April 3, 1987, the district court denied the WIGA's motion and granted the motion of Hamedani and Canal, concluding that, in light of Early American's insolvency, the WIGA must fulfill the role of primary insurer and that Canal remains as the secondary carrier. This appeal followed. During the pendency of this appeal, the WIGA filed a motion to have the issues certified to the Washington Supreme Court.

The starting point in every case involving construction of a statute is the language of the statute itself. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985). In this case, the language of section 48.32.060(1)(b) of the Washington Act is clear and unambiguous. With respect to covered claims, the mandatory language provides that the WIGA must fulfill the obligations of an insolvent insurer. Furthermore, in this case, the underlying incident was a "covered claim" as that term is defined in R.C.W. § 48.32.030(4).[3]

The WIGA maintains that a claimant must exhaust every other available source of recovery, including secondary insurers, before resorting to the fund. To support this argument, the WIGA cites R.C.W. § 48.32.100(1), the exhaustion provision of the statute, and *Prutzman v. Armstrong,* 90 Wash.2d 118, 579 P.2d 359 (1978). The exhaustion section provides:

Any person having a claim against his insurer under any provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of such recovery under the claimant's insurance policy.

In *Prutzman,* the Washington Supreme Court considered *en banc* the question of whether a claimant must exhaust his uninsured motorist coverage before calling upon the WIGA to pay a covered claim. Focusing on the exhaustion provision, the *Prutzman* court answered the question affirmatively. In so doing, the court stated that the "exhaustion provision is apparently designed to limit WIGA liability to situations in which no other source of recovery for damages exists." *Prutzman,* 579 P.2d at 362. The WIGA urges that the secondary or excess liability insurance coverage under the Canal policy constitutes an "other source of recovery" that must be exhausted before it can be held accountable. We disagree. The clear language of the exhaustion provision upon which the *Prutzman* court relied requires only that, before turning to the WIGA, a claimant must first exhaust *his own* uninsured motorist coverage. The Keeters have already complied with this requirement.

The WIGA further contends that the Washington Act is sufficiently similar to the California Insurance Guarantee Association Act ("California Act") so that we should defer to California cases that have interpreted it in order to resolve the legislative intent of the Washington Act. Specifically, the WIGA cites *Ross v. Canadian Indemnity Ins. Co.,* 142 Cal.App.3d 396, 191 Cal.Rptr. 99 (1983), in which the court held that, when a primary insurer becomes insolvent, a secondary insurer, assuming one is available, should be held accountable before payment is sought from the California Insurance Guaranty Association for any resulting loss. However, we observe

---

**3.** The claimed injuries arose out of and were within coverage of the Early American policy, Durkin was a resident of the State of Washington at the time of the accident, and the exception for "amounts due any reinsurer, insurer, insurance pool, or underwriting association" did not apply.

that, unlike section 48.32.030(4) of the Washington Act, section 1063.1(7) of the California Act specifically exempts "any claim to the extent it is covered by any other insurance of a class covered by the provisions of this article" from the definition of "covered claims." The Washington Act is, in pertinent part, far more analogous to the Florida Insurance Guaranty Association Act ("Florida Act"). *Vaughn v. Vaughn*, 23 Wash.App. 527, 597 P.2d 932, 934 (1979) (in this respect, the language of the Florida Act is "identical" to that of the Washington Act). In *Florida Insurance Guaranty Association v. Giordano*, 485 So.2d 453, 455–56 (1986), the court indicated, albeit in dicta, that, in the event the primary insurer was insolvent, the Florida Insurance Guarantee Association would be liable to the extent provided under the Florida Act before resort is made to any secondary or excess insurer.

The WIGA's remaining arguments do not merit lengthy discussion. The WIGA asserts that the guaranty fund was established to protect members of the public, not insurance carriers, from the consequences of insurer insolvency. We note though that the "public" will be unaffected by the disposition of this case since the Keeters will be "protected" regardless of the outcome. The WIGA further contends that, because they solicit applications for insurance and underwrite risks in return for premiums, insurance companies do not stand on an equal footing with the WIGA. While the WIGA may not collect premiums from the public, it does collect assessments from its member insurers such as Canal and Early American. The WIGA finally claims that the result urged by Canal is inequitable because it will allow Canal to escape liability for a risk it chose to underwrite. This is not necessarily so. Canal elected to underwrite a policy in which it acted as an excess insurance carrier. The result reached in this case merely allows Canal to remain the excess carrier. Should liability exceed the limits provided for in the Washington Act, Canal will be accountable for the difference.

In summary, we hold that the statutory obligations imposed upon the WIGA by the Washington Act are clear. Accordingly, the judgment of the district court is AFFIRMED, and the WIGA's motion for certification to the Washington Supreme Court is DENIED.