[Civ. No. 66312. Second Dist., Div. Three. Apr. 27, 1983.]

ELMER ROSS et al., Plaintiffs and Appellants, v.
CANADIAN INDEMNITY INSURANCE COMPANY,
Defendant and Respondent.

**COUNSEL**

Sroloff & Biren and Matthew B. F. Biren for Plaintiffs and Appellants.

Reilly & Zell and Arthur M. Reilly for Defendant and Respondent.

**OPINION**

**LUI, Acting P. J.**—Elmer Ross, California Insurance Guaranty Association (CIGA), and NARCO appeal from an order of dismissal entered following the sustaining of defendant (respondent) Canadian Indemnity Insurance Company's demurrer to their first amended complaint. The dismissal was entered following appellant's election not to file an amended complaint.[1] The principal issue involves whether CIGA or respondent was liable as the insurer for NARCO, defendant in a personal injury action brought by appellant Ross.

---

[1] A demurrer had also been sustained as to appellant's original complaint.

## The First Amended Complaint

In the first amended complaint, appellant Ross alleged that he had been a plaintiff in personal injury action number C138267 in Los Angeles Superior Court. NARCO had been the defendant in that action, which had alleged personal injuries as a result of an October 9, 1974, accident, in which Ross was acting within the course and scope of his employment with Dependable Trucking Company (Dependable). Ross was on NARCO's premises when he was loading drums of acid packed by NARCO onto a truck owned by Dependable and had acetic acid spill onto his body because of negligent packing by NARCO. The first amended complaint alleged that NARCO premises were insured for public liability through Signal/Imperial Insurance (Signal). The complaint further alleges that Dependable and the vehicle were insured by respondent's policy GELA 269045 for public liability purposes and for "injuries occurring during the loading and unloading of the vehicle."[2]

The first amended complaint further alleges that pursuant to the California Insurance Code, Signal's policy was primary and respondent's policy, with NARCO as an additional insured, constituted excess coverage. Appellants allege that when Signal became insolvent before resolution of the underlying action, respondent's insurance policy became primary. It is alleged that on April 13, 1978, NARCO and CIGA demanded that respondent tender a defense to NARCO and satisfy Ross' personal injury claim. Respondent allegedly refused the tender of the defense on May 23, 1978, which appellants allege constituted breach of its insurance policy.

CIGA is an association of insurers that are authorized to transact insurance business in California. Membership in CIGA is required unless exempt by the provisions of the Insurance Code (§ 1063 et seq.). The purpose of CIGA is to provide coverage for insured losses in the event of the insolvency of a member. CIGA undertook the defense of NARCO against Ross and further undertook the defense of the reimbursement of Dependable's workers' compensation carrier against NARCO. It is alleged that Ross paid the claim of the workers' compensation carrier from the $25,000 paid to him by NARCO and CIGA, which settled Ross' claim against NARCO with a stipulation of judgment in favor of Ross in the amount of $50,000 plus interest and costs.

The first amended complaint further alleges that in consideration of the above and the agreement of Ross not to take steps to execute on or collect the balance of the stipulated judgment, NARCO and CIGA assigned to Ross their rights

---

[2]We note that neither insurance policy is attached to the complaint, which does not quote directly from either of them. Because of the posture of this case, involving the sustaining of the demurrer, we will assume that the allegations are true.

against respondent to collect the balance of monies due under the terms of the judgment. NARCO and CIGA retained their rights to collect the $25,000 actually paid to Ross and, according to the complaint, are each entitled to attorneys' fees incurred subsequent to respondent's refusal to accept the tender of the defense. Ross sees himself as a third party beneficiary because of the partial assignment; he admits he is not suing under any rights he may have as an employee, but only as an assignee.

The second cause of action, based on the same facts, alleges tortious breach of insurance contract for refusing to defend and seeks punitive damages. The third cause of action asks for declaratory relief setting forth the rights of the parties.

### *The Demurrer*[3]

Respondent demurred to each of the three causes of action on the ground that they failed "to state facts sufficient to constitute a cause of action against [respondent]." Respondent demurred on the same ground as to the entire complaint and, additionally, alleged that the complaint was uncertain in that it cannot be determined for what reason or in what manner respondent's policy became primary, it cannot be determined in what manner respondent's conduct constituted a breach of the obligations of good faith and fair dealing or what that conduct consisted of, and that it is uncertain upon what basis appellants are entitled to receive punitive damages.

In respondent's memorandum of points and authorities in support of the demurrer, respondent argues that under Insurance Code section 11580.9, subdivision (c), respondent's insurance was excess and not primary.

As to the workers' compensation claim, respondent asserts that the complaint does not allege any demand upon respondent to defend or reimburse appellants for that action. In any event, respondent asserts that a workers' compensation lien would come out of any recovery Ross received as plaintiff and therefore is not a proper element of damages.

Citing *Doser* v. *Middlesex Mutual Ins. Co.* (1981) 101 Cal.App.3d 883, 894 [162 Cal.Rptr. 115], respondent further objects to appellants' stipulation of judgment in the amount of $50,000 plus interest and costs. Regarding that

---

[3]A copy of the demurrer was not included in the clerk's transcript on appeal. Pursuant to rule 12(a) of the California Rules of Court, we have augmented the record on appeal to include the trial court file. That file indicates that on August 31, 1982, respondent requested that the clerk's transcript be supplemented to include that pleading, which had originally been requested in appellant's notice of appeal and designation of record. Apparently, no such correction was forthcoming. Since the trial court file is before us, we have access to the demurrer and related pleadings in that file.

stipulation, respondent asserts that the complaint is uncertain and that there has been no explanation why the full $50,000 has not been paid to Ross if the stipulated judgment was for that amount. Respondent also points out the change between the original complaint and the first amended complaint regarding the assignment; in the original complaint, appellants allege that NARCO and CIGA assigned to Ross their rights against respondent. In the first amended complaint, the assignment was alleged to be a "partial" assignment so that CIGA and NARCO could remain as parties.

As for the punitive damages, respondent asserts that no facts relative to malice are alleged. Respondent also shows an alteration of allegations regarding ratification of the allegedly wrongful conduct.

In their memorandum of points and authorities in opposition to the demurrer to the first amended complaint, appellants assert that after a trial in the underlying action, plaintiffs filed a motion for new trial on the grounds that the damages were inadequate and not supported by the evidence. The superior court judge at the trial agreed and signed an order wherein the motion for new trial would be denied if defendant consented to an additur and total recovery to plaintiff of $50,000. After further negotiations, a stipulated judgment consistent thereto was entered.

The trial court sustained the demurrer "per points and authorities of moving party."

*Contentions on Appeal*

Appellants make the following contentions:

1. The trial court acted improperly in sustaining respondent's demurrer to the first amended complaint because respondent's policy was primary under Insurance Code section 11580.9, subdivision (c) and CIGA's insolvency benefits did not apply.

2. The first amended complaint was sufficiently certain and is not demurrable on that ground.

3. Ross, CIGA and NARCO are each appropriate parties, and the attack through demurrer of their standing was not meritorious.

4. Punitive damages are appropriate in an action against an insurance carrier for bad faith conduct.

5. The application of general principles concerning attacks on complaints by demurrer militate in favor of denying the demurrer.

*Discussion*

### 1. *Respondent Was Liable for the Defense of NARCO*

In reviewing the trial court's sustaining of the demurrer in the case at bench, we must examine the rules relating to examination of a demurrer sustained with leave to amend. Applying those rules to the first amended complaint and interpreting Insurance Code sections 11580.9, subdivision (c) and 1063.1, subdivision (c)(7), along with public policy considerations relating to CIGA, we conclude that the trial court improperly sustained the demurrer if its decision was based on that ground.

"We proceed to examine the complaint for its legal sufficiency according to the familiar well settled principles. ■ 'A demurrer admits all material and issuable facts properly pleaded. [Citations.] However, it does not admit contentions, deductions or conclusions of fact or law alleged therein. [Citations.]' [Citation.] ■ 'In determining whether or not the complaint is sufficient, as against the demurrer, upon the ground that it does not state facts sufficient to constitute a cause of action, the rule is, that if upon a consideration of all the facts stated it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged.' [Citation.] In other words, 'plaintiff need only plead facts showing that he may be entitled to some relief [citation].' [Citation.] Furthermore, we are not concerned with plaintiff's possible inability or difficulty in proving the allegations of the complaint." (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032].)

However, "[w]e also observe that . . . the courts have recognized an exception to this rule where the plaintiff, after an opportunity to amend, fails to remove the defect. (See 3 Witkin, Cal. Procedure (2d ed. 1971) §§ 336-337, pp. 2004-2006.) In such event, it has been said that '[s]ubstantial justice requires that the essential facts appear at least by necessary implication from the allegations set forth' [citation], and that it must be assumed that the plaintiff 'has stated as strong a case as he can.' [Citation.] (*Id.*, at pp. 572-573, fn. 4. See also *McIntyre* v. *Hauser* (1900) 131 Cal. 11, 12 [63 P. 69].)

Respondent relies on Insurance Code section 11580.9, subdivisions (c) and (f) to support its argument that it provided only excess and not primary insurance. Subdivision (c) provides: "Where two or more policies are applicable to the same loss arising out of the loading or unloading of a motor vehicle, and one or more of the policies is issued to the owner, tenant, or

lessee of the premises on which the loading or unloading occurs, *it shall be conclusively presumed that the insurance afforded by the policy covering the motor vehicle shall not be primary,* notwithstanding anything to the contrary in any endorsement required by law to be placed on such policy, *but shall be excess over all other valid and collectible insurance applicable to the same loss* . . . ; and, in such event, the two or more policies shall not be construed as providing concurrent coverage, and *only the insurance afforded by the policy or policies covering the premises on which the loading or unloading occurs shall be primary* and such policy or policies shall cover as an additional insured with respect to the loading or unloading operations all employees of such owner, tenant, or lessee while acting in the course and scope of their employment." (Italics added.) Subdivision (f) provides: "The presumptions stated in subdivisions (a) to (d), inclusive, may be modified or amended only by written agreement signed by all insurers who have issued a policy or policies applicable to a loss described in such subdivisions and all named insureds under such policies."

Appellants contend that CIGA is not "valid and collectible insurance" within the meaning of section 11580.9, subdivision (c) and, additionally, the claim is not a "covered claim" within Insurance Code section 1063.1, establishing the California Insurance Guarantee Association. Subdivision (c)(7) of section 1063.1 states that " '[c]overed claims' shall not include (a) any claim *to the extent it is covered by any other insurance* of a class covered by the provisions of this article available to the claimant . . . ." (Italics added.) Appellants argue that the claim is indeed covered, by respondent's insurance, and therefore CIGA coverage does not apply.

Interpreting these statutes in relation to the facts of the case before us, we are convinced that the result depends in large part on which section is first applied. That is, if we first look at section 11580.9, subdivision (c), we could decide that CIGA constitutes "other valid and collectible insurance" so that respondent's policy is excess and CIGA was responsible for the defense. However, if we look first at section 1063.1, we could decide the claim "is covered by any other insurance," i.e., respondent's policy, and therefore CIGA is not liable for the defense.

We resolve this dilemma by reference to the public policy considerations involved in the creation of CIGA in its role of protecting the public from insolvent insurers. "CIGA is a compulsory association of insurers created by statute (Ins. Code, § 1063 et seq.) [fn. omitted] whose purpose is to provide insurance against loss arising from the failure of an insolvent insurer to discharge its obligations under its insurance policies. [Citations.]" (*California Union Ins. Co.* v. *Central National Ins. Co.* (1981) 117 Cal.App.3d 729, 731 [173 Cal.Rptr. 35].) As the court stated in *California Union Ins. Co., supra,* 117 Cal.App.3d at page 734, the creation of CIGA was to provide the insured

public with an additional protection that their claims would be paid even though their insurer may be insolvent. "The Legislature chose to provide a limited form of protection for the public, *not a fund for the protection of other insurance companies from the insolvencies of fellow members.* In comments upon a similar provision [to section 1063.1, subds. (c)(4) and (c)(7)], excluding from coverage the claims of other insurers by subrogation or otherwise, the drafters of the National Association of Insurance Commissioners Insurance Guaranty Association Model Bill stated, 'The subcommittee does not feel that coverage should be extended to elements of the insurance industry which know or reasonably can be expected to know the financial condition of various companies.'" (*Ibid.*) (Italics added.)

In our view, CIGA was created for the protection of the public. Thus, when a secondary insurer is available in the event of an insolvent primary insurer, the secondary insurer should be responsible in the absence of specific language to the contrary. The secondary insurer has received a premium for the risk and thus the secondary insurer, and not CIGA, should be responsible for the coverage of the loss.

■ Because we reach this decision regarding respondent's liability, we must now examine the other issues raised by demurrer to see if any of them would support the trial court's decision sustaining the demurrer.

*2. The First Amended Complaint Is Sufficiently Certain in Its Allegations of Punitive Damages*

We have reviewed the complaint in light of respondent's claim of uncertainty regarding the allegations relating to punitive damages. Respondent does not assert this issue in its brief, and our review corroborates that the complaint is sufficiently certain in this regard.

*3. The Stipulated Judgment Will Be Enforced if Appellants Can Demonstrate Good Faith*

The stipulation of judgment presents problems that are not solved on the face of the first amended complaint. The issue of possible collusion posed by the stipulation that Ross not take steps to execute on or collect the balance of the judgment from NARCO and CIGA but for all parties to have rights as against respondent (see *Doser* v. *Middlesex Mutual Ins. Co., supra,* 101 Cal.App.3d 883) is troublesome. Unless appellants can demonstrate to the trial court that the stipulation of judgment and accompanying agreements were made in good faith, a decision which is difficult to make at the demurrer stage, respondent's liability on that judgment will be limited to the $25,000 actually paid to Ross by CIGA.

A related issue involves the changes from the original complaint to the first amended complaint, raised by respondent in its demurrer. The alterations, however, were not irreconcilable, although they do make one suspicious of the nature of the stipulated judgment and agreements. We do not find the alterations render the complaint subject to demurrer on the ground of uncertainty.

The order of dismissal is reversed and the case is remanded for further proceedings consistent with this opinion.

Potter, J., and Danielson, J., concurred.