**Goldie F. OLIVER and Frank M. Oliver, Respondents,**

v.

**OKLAHOMA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION, Appellant.**

No. WD 41258.

Missouri Court of Appeals, Western District.

Aug. 29, 1989.

Glenn E. Bradford, Kansas City, for appellant.

Thomas R. Summers, St. Joseph, for respondents.

Before GAITAN, P.J., and MANFORD and ULRICH, JJ.

GAITAN, Presiding Judge.

Plaintiffs-respondents, Goldie F. Oliver and Frank M. Oliver, filed a lawsuit in the Circuit Court of Andrew County, Missouri, against Bray Lines, Inc. and George Arnold

---

**1.** The record of November 11, 1969 was the plea   transcript.

Bremer. The lawsuit arose out of a collision between respondents' automobile and a truck driven by George Arnold Bremer and owned by Bray Lines. The collision occurred on March 23, 1983, on Interstate 29 near the intersection of Interstate 29 and U.S. Highway 59 and Route R.A. Respondents charged defendant Bremer with negligence in causing the collision. Respondent Goldie F. Oliver claimed serious personal injuries and respondent Frank M. Oliver, her husband, claimed loss of consortium. We reverse and remand.

Bray Lines was insured by Excalibur Insurance Company, which was declared insolvent on August 23, 1984, within two years of the date of the automobile accident giving rise to the litigation. Appellant, Oklahoma Insurance Property and Casualty Guaranty Association, assumed certain liabilities of the defunct Excalibur Insurance Company, pursuant to Oklahoma statutes.

Attorney James H. Horn of Kansas City, Missouri was hired by Excalibur Insurance Company to represent Bray Lines in the original suit. In January 1986, Mr. Horn, authorized by appellant, reached a settlement agreement with the attorney for respondents wherein respondents agreed to accept a settlement of $52,500.00. After the settlement had been agreed to by Mr. Horn, it came to the attention of appellant for the first time, that respondents had uninsured motorist coverage in a policy written by State Farm Mutual Insurance Company. Appellant refused to complete the settlement unless and until respondents exhausted their claim for uninsured motorist coverage with State Farm. Their reason was an Oklahoma statute which required exhaustion of uninsured motorist provisions. Bray Lines paid $25,000.00 to respondents. It was self-insured up to $25,000 and settled with respondents. Respondents reserved their claims against all other parties. Respondents then amended their Petition to add appellant and State Farm as party defendants. Thereafter, respondents filed a formal Motion to Enforce Settlement Agreement. After briefing and oral argument, the trial court entered a judgment against appellant in the amount of $27,500.00 plus costs. Thereafter, respondents voluntarily dismissed defendant State Farm, without prejudice, and this appeal followed.

The crux of appellant's argument is subparagraph A of Title 36, Section 2012 of the Oklahoma Statutes. Appellant construes sub-paragraph A to prohibit it from following through with the settlement agreement with respondents by paying Twenty-seven Thousand Five Hundred Dollars ($27,500.00) which was the balance of the settlement after Bray Lines, Inc. paid its Twenty-five Thousand Dollars ($25,-000.00). That statute section 2012, Title 36 reads as follows:

A. Any person having a claim against an insurer under any provision of an insurance policy other than a policy of the insolvent insurer which is also a covered claim shall be required to first exhaust his rights under such policy. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under such other insurance policy....

In 1986, Oklahoma amended Section 2012(A). Sub-section A remained the same with the addition of one sentence, "The provisions of this subsection shall not apply to uninsured motorist coverage." This new language became effective November 1, 1986. Appellant was added as a party pursuant to First Amended Petition for Damages for Bodily Injury filed on June 16, 1986, with appellant's counsel certifying the mailing of the appellant's separate answer to other counsel on March 12, 1987.

█ Missouri law provides that a tortfeasor whose insurer becomes insolvent within two years after an accident is deemed to be uninsured. Section 379.-203(2) and (3), RSMo (1982). Therefore, appellants allege a payment by them would have violated the provisions of Section 2012(A) Oklahoma statutes because respondents had not exhausted their own uninsured motorist coverage.

Under the provisions of Section 2012(A), as applicable to the present case as of January, 1986, a payment to plaintiffs un-

der Mr. Horn's settlement agreement would have violated the terms of the Oklahoma statute which set up and regulated the actions of defendant Association. The cases are virtually uniform in interpreting such an exhaustion provision (such as Section 2012(A)) as requiring the exhaustion of a claimant's uninsured motorist coverage prior to making a claim against a guaranty association. *Kentucky Ins. Guaranty Assoc. v. State Farm Mut. Automobile Ins. Co.*, 689 S.W.2d 32 (Ky.App.1985), is an action identical to the present case. In this case, the plaintiffs were injured by an insured of an insolvent insurance company. The plaintiffs initiated their action against the insured tortfeasor, and the plaintiffs' uninsured motorist carrier, State Farm Insurance Company. The Kentucky Court of appeals interpreted K.R.S. Sec. 304.36–120(1), a provision identical to Title 36 Okla. Stat. Sec. 2012(A). The court concluded:

> In our opinion, K.R.S. Sec. 304.36–120(1) is obviously intended to require insureds ... to exhaust their right to recover sums due under the uninsured motorist coverage portion of their own liability insurance policy before they may pursue a 'covered claim' against the association.

689 S.W.2d at 35.

*Ross v. Canadian Indemnity Ins. Co.*, 142 Cal.App.3d 396, 191 Cal.Rptr. 99 (1983), involved an insolvent primary carrier, and a solvent excess carrier. The California court, considering the public policy considerations involved in the creation of the California Guaranty Association, concluded:

> In our view, CIGA was created for the protection of the public. Thus, when a secondary insurer is available in the event of an insolvent primary insurer, the secondary insurer should be responsible in the absence of specific language to the contrary. The secondary insurer has received a premium for the risk, and thus the secondary insurer, and not the California Guaranty Association, should be responsible for the coverage of the loss.

191 Cal.Rptr. at 104.

■ Respondents paid a premium to State Farm for an automobile liability policy including uninsured motorist coverage. Under Section 379.203(3), RSMo (1982), a tortfeasor is deemed to be an uninsured motorist where, as here, the tortfeasor's insurer is declared insolvent within two years of the accident date. Before a claim can be made under the Oklahoma Insurance Guaranty Act, the claimant must exhaust his own insurance remedies. The clear legislative purpose as set out in Section 2012(A) is to render the Oklahoma Guaranty Fund a source of last resort in the event of insurer insolvency. *See, Vokey v. Mass. Insurers, Etc.*, 381 Mass. 386, 409 N.E.2d 783, 786 (1980). "The Legislature chose to provide a limited form of protection for the public, *not a fund for the protection of other insurance companies from the insolvencies of fellow members.*" *Ross v. Canadian Indemn. Ins. Co.*, 191 Cal.Rptr. at 103. Respondents had not exhausted their own insurance when Mr. Horn agreed to settle with them. Any payment to respondents at that time would have specifically violated the Oklahoma Insurance Guaranty Act.

■ It is well-settled under Missouri law that an agreement to act in violation of a statute is void and unenforceable. *Sandbothe v. Williams*, 552 S.W.2d 251, 254 (Mo.App.1977). A valid and enforceable contract may not arise out of a transaction prohibited by statutory law. *Greer v. Zurich Ins. Co.*, 441 S.W.2d 15 (Mo.1969); *Schoene v. Hickam*, 397 S.W.2d 596 (Mo. 1965); *Bridges v. First Nat'l Bank in St. Louis*, 613 S.W.2d 716 (Mo.App.1981); *King v. Moorehead*, 495 S.W.2d 65 (Mo. App.1973); *Twiehaus v. Rosner*, 362 Mo. 949, 245 S.W.2d 107, 111 (1952).

■ Although attorney Horn was empowered to settle with plaintiffs, the settlement agreement was repudiated while still executory, because plaintiffs had not exhausted their remedies under their own uninsured motorist coverage, as required by Section 2012(A). *See, e.g., Greer v. Zurich Ins. Co.*, 441 S.W.2d at 26. Defendant Association correctly and legitimately refused to complete an agreement made in contravention of the Oklahoma statute and

Oklahoma public policy as expressed in the statute. Missouri law contains a like requirement of prior exhaustion expressing the same public policy.

Respondents have argued that the amendment to the Oklahoma law should be applied retroactively. That is, the reference to excluding uninsured motorist coverage from Section 2012A is appropriate here. However in *Welch v. Armer v. Union,* 776 P.2d 847, 849 (Okl.1989) the Supreme Court of Oklahoma held that the amended provisions of Section 2012 of the Guaranty Act are not applied retroactively.

Under established Missouri authority, defendant Association was not required to violate the Oklahoma statute which set up and regulated its conduct by completing a settlement agreement in specific contravention of statutory law. Plaintiffs did not exhaust their remedies under their own applicable uninsured motorist insurance coverage. Therefore, the settlement agreement is unenforceable because made in the contravention of Oklahoma law.

The judgment is reversed and the case remanded for trial. The respondents shall be granted leave to amend its petition to join State Farm Mutual Insurance Company as a party.

All concur.