**FLIPPS NINE, INC., d/b/a Hot Wheels Skating Center and Ana Gonzales, Plaintiffs–Appellants,**

v.

**MISSOURI PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION, Defendant–Respondent.**

No. 69574.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 28, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 17, 1997.

Application to Transfer Denied
April 29, 1997.

Hawkins Law Offices, Robert L. Hawkins, III, Jefferson City, Alan C. Gold, South Miami, FL, Neil Bernstein, Washington University School of Law, St. Louis, for Plaintiffs–Appellants.

Evans & Dixon, Gerre S. Langton, Kevin P. Schnurbusch, St. Louis, for Defendant–Respondent.

HOFF, Judge.

Flipps Nine, Inc., d/b/a Hot Wheels Skating Center, and Ana Gonzales (Insureds) appeal from an order dismissing their class action against the Missouri Property and Casualty Insurance Guaranty Association

(MIGA). Insureds sued MIGA because it refused to indemnify Insureds for costs of defending and settling claims filed against them after their insurer, Bel–Aire Insurance Company (Bel–Aire), was declared insolvent. MIGA denied indemnification on the ground that costs of nonresident insureds are not covered claims under the Missouri Property and Casualty Insurance Guaranty Association Act (the Act). None of Insureds are residents of Missouri, although the purchasing groups that obtained the insurance on behalf of Insureds are non-profit organizations residing and incorporated in Missouri.

The trial court dismissed the class action finding that "the term 'insured' within the meaning of § 375.771 means those parties or persons against whom a claim is being made and not the purchasing groups themselves." We affirm.

██ When reviewing the grant of a motion to dismiss a petition, all facts alleged in the petition are deemed true and the plaintiff is given the benefit of every reasonable intendment. *Magee v. Blue Ridge Professional Bldg. Co.*, 821 S.W.2d 839, 842 (Mo. banc 1991).

Insureds are members of purchasing groups who were insured by Bel–Aire. Bel–Aire was declared insolvent on July 15, 1993. As plaintiffs in the class action, Insureds are either those who had unpaid claims pending against them that were brought by claimants before Bel–Aire's date of declared insolvency, or are unpaid claimants whose claims arose out of and are within the coverage of insurance policies issued by Bel–Aire to the purchasing group. When Bel–Aire was declared insolvent, Insureds presented their unpaid claims to MIGA in order to be covered under the Act.

MIGA is a non-profit legal entity which was created by statute in order to protect certain insureds from losses resulting from the insolvency of certain insurance companies. *Qualls v. Missouri Ins. Guar. Ass'n*, 714 S.W.2d 732, 734 (Mo.App.1986). If covered under the Act, MIGA will cover claims of insureds after the insurer has been declared insolvent. MIGA's obligation to claimants and insureds arise when insolvency is declared. *Hirschbach Motor Lines, Inc., v. Missouri Insurance Guaranty Association*, 782 S.W.2d 682, 684 (Mo.App.1989).

Under the Act, all member insurers are required to remain members of MIGA as a condition of their authority to transact insurance in the State of Missouri. § 375.772.1 RSMo Cum.Supp.1992[1]. This requires all insurers to contribute part of any insured's insurance premium to MIGA in order to fund the association. *Id.*

Bel–Aire paid Missouri taxes on all premiums it received from Insured's purchasing groups, including premiums paid by Insureds. Missouri Division of Insurance reports filed with MIGA reflect that all of the premiums Bel–Aire received for the insurance it sold to these Missouri purchasing groups were considered Missouri net written premiums. However, MIGA denied indemnification on the ground that, as nonresidents of Missouri, Insureds' claims were not covered under the Act.

Insureds filed their class action against MIGA in the Circuit Court of Cole County, Missouri, where the receivership action of Bel–Aire was pending, and sought to have the case transferred to the court handling Bel–Aire's liquidation. The Special Deputy Liquidator for Bel–Aire filed a Motion to Intervene, seeking to have the case consolidated with the Bel–Aire receivership proceeding. Insureds' petition sought declaratory judgment and other relief.

The trial court granted Insureds request to certify the case as a class action. MIGA sought a writ of prohibition in the Missouri Court of Appeals—Western District. The Western District granted MIGA's motion to transfer for improper venue and transferred the case to St. Louis County. On November 7, 1995, the trial court sustained MIGA's motion to dismiss each count of Insureds' petition for failure to state a claim against MIGA. The trial court specifically found "that the term 'insured' within the meaning of § 375.771 means those parties or persons against whom a claim is being made and not

---

1. Hereinafter, all statutory citations refer to

RSMo Cum.Supp.1992 unless otherwise noted.

the purchasing group themselves." This appeal followed.

■ In their first point, Insureds argue the trial court erred in finding the term "insured" did not mean the party named in the insurance contracts because "such interpretation is contrary to the clear language of the statute, and contrary to the policy underlying the statute." Instead, Insureds urge, the trial court should have found that since the purchasing groups reside and are incorporated in Missouri, the residency requirement of the Act is satisfied and the claims should be covered.

Therefore, the determinative issue is whether the term "insured," under the Act, means those parties or persons against whom a claim is being made and not the purchasing groups themselves, or whether it also includes purchasing groups and their members.

■ As a "nonprofit unincorporated legal entity" created purely by statute, MIGA's responsibilities for claims resulting from the insolvency of certain insurance companies is mandated by statute rather than by choice. *Pannell v. Missouri Insurance Guaranty Association,* 595 S.W.2d 339, 352 (Mo.App. 1980). Consequently, the limits of its liability are tightly drawn by the legislation which created it. *Id.*

Under the Act, a "Covered claim" is defined as:

[A]n unpaid claim including those for unearned premiums, presented within the time specified ... and *which arises out of and is within the coverage of an insurance policy* ... issued by a member insurer, if such insurer becomes an insolvent insurer after September 28, 1971, *and the claimant or insured is a resident of this state* at the time of the insured event.

§ 375.772.2(2)(emphasis added).

Insureds' argument that the Missouri residency of the purchasing group satisfies this section is misguided. There has been no claim by or against the purchasing group which arises out of and within the coverage of the insurance policies, nor do Insureds allege such a claim. Instead, Insureds' petition acknowledges that all members of its class are non-residents of Missouri. Thus, given the facts of this case, the petition did not state a "covered claim" under § 375.772.2(2).

Though we find no Missouri case dealing with this issue, the Illinois Court of Appeals construed a similar provision under the Illinois Insurance Guaranty Act in *Beatrice Foods Co. v. Illinois Insurance Guaranty Fund,* 122 Ill.App.3d 172, 77 Ill.Dec. 604, 460 N.E.2d 908 (1984). The facts, as well as the language of the statute establishing the insurance guaranty fund, are quite similar.

In *Beatrice,* Beatrice Foods Co. (Beatrice), an Illinois corporation, was insured by Reserve Insurance Company (Reserve) under a general and automobile liability policy. *Id.* 77 Ill.Dec. at 604, 460 N.E.2d at 910. This policy covered Beatrice Foods and its owned, controlled, subsidiary and affiliated companies, corporations or partnerships, including a nonresident subsidiary called Peter Eckrich and Sons, Inc. (Eckrich) which was a resident of Indiana. *Id.*

It was undisputed that when Eugene Allgood was killed in a collision with a vehicle owned and operated by Eckrich, the Reserve policy covered Eckrich's liability to Allgood's estate. *Id.* However, Reserve did not pay any money toward satisfaction of the judgment and eventually became insolvent. *Id.* Beatrice then filed a claim with the Illinois Insurance Guaranty Fund to recover part of the payment it made to Allgood's estate. *Id.* The Illinois Insurance Guaranty Fund denied Beatrice's claim. *Id.*

The Illinois Insurance Guaranty Fund Act defined a "covered claim" as:

an unpaid claim ... for a loss arising out of and within the coverage of an insurance policy to which this Article applies and which is in force at the time of the occurrence giving rise to the unpaid claim, made by a person insured under such policy or by a person suffering injury or damage for which a person insured under such policy is legally liable, and for unearned premiums, if (a) The company issuing the policy becomes an insolvent company ... and, (b) *The claimant or insured is a resident of*

*this State at the time of the insured occurrence.* (emphasis added).

*Id.*

The *Beatrice* court found that Beatrice was not liable to Allgood's estate for the judgment entered against Eckrich. Therefore, the court found Beatrice could not suffer "a loss arising out of and within the coverage" of the Reserve policy. *Id.* 77 Ill.Dec. at 606, 460 N.E.2d at 910. In addition, the court found that although Eckrich was an insured under the policy, it did not qualify under the Illinois Insurance Guaranty Fund Act because it did not meet the residency requirement. *Id.* at 607, 460 N.E.2d at 911.

The *Beatrice* court concluded:

Plaintiff now asks to recover payments it made to satisfy the judgment against Eckrich. To allow such a recovery would be to allow plaintiff to circumvent the residency requirement of the Illinois Insurance Guaranty Fund Act. We could not allow a claim brought by plaintiff on behalf of Eckrich. Nor can we allow plaintiff to voluntarily satisfy a judgment against Eckrich, and thereafter bring a claim to recover the payment made. We are of the opinion that the insured making a claim under the Illinois Insurance Guaranty Fund Act must be the person who suffered a 'loss arising out of and within the coverage' of the insurance policy.

*Id.*

The analysis in *Beatrice* is applicable to this case. Although we find that Insureds, not the purchasing groups, were covered under the Bel–Aire insurance policy, we conclude that Insureds do not meet the residency requirement of the Act, and are therefore, outside the scope of coverage by MIGA. Accordingly, the trial court did not err in dismissing count one of Insureds' petition. Point denied.

■ In their second point, Insureds contend that because the Missouri legislature enacted a new statute in 1991 [2] which specifically excludes coverage of claims of nonresi-

dent members of Missouri purchasing groups from MIGA protection, it is implicit that claims of nonresidents were covered by the fund previously.[3] Because the events that gave rise to Insureds' class action occurred before the enactment of § 375.1087.3 RSMo Cum.Supp.1991, Insureds argue they are entitled to indemnification from MIGA. We disagree.

■ While an amendment to a statute must be deemed to have been intended to accomplish some purpose, that purpose can be clarification rather than a change in existing law. *Osage Outdoor Advertising, Inc. v. State Highway Comm'n,* 699 S.W.2d 791, 793 (Mo.App.1985). Additionally, statutes relating to the same or similar subject matter, even though enacted at different times, must be construed together. *ITT Canteen Corp. v. Spradling,* 526 S.W.2d 11, 16 (Mo. banc 1975).

In view of the fact that the trial court's interpretation of "insured" under the Act is not inconsistent with § 375.1087.3 RSMo Cum.Supp.1991, we conclude that § 375.1087.3 RSMo Cum.Supp.1991 was intended only to clarify and particularize existing law and did not mean that non-residents were previously covered by MIGA. Point denied.

■ In the third and final point, Insureds argue the trial court did not provide a basis for its dismissal of the second and third counts of their petition. In their second count based upon theories of estoppel and waiver, Insureds allege that because MIGA treated the insurance policies issued by Bel–Aire to be fully covered by the Act and collected premiums to fund MIGA, MIGA is estopped from denying coverage to Insureds under the Act.

■ We restate that in reviewing an order sustaining a motion to dismiss, we consider all facts alleged in the petition to be true and plaintiff is given the benefit of every reasonable intendment. *Magee,* 821 S.W.2d at 842.

---

**2.** § 375.1087.3 RSMo Cum.Supp.1991.

**3.** Section 375.1087.3 RSMo Cum.Supp.1991 provides: "[w]hen a purchasing group obtains insurance covering its members' risks from an

authorized insurer, only risks resident or located in this state shall be covered by any applicable state guaranty funds."

We may only reverse the trial court's dismissal if, taking all the facts pleaded to be true, the petition states a cause of action. *I.R. Kirk Farms, Inc. v. Pointer,* 876 S.W.2d 283, 285 (Mo.App.1994).

The facts alleged by Insureds in their petition indicate that Bel–Aire treated the premiums it received from Insureds as direct written premiums in Missouri without regard to the domicile of the individual group members for whom the insurance was purchased. Bel–Aire reported these premiums to MIGA as Missouri net written premiums. Bel–Aire also paid Missouri taxes on these premiums. Furthermore, MIGA assessed contributions against Bel–Aire for every year on the basis of the total gross premiums Bel–Aire received for its purchasing group policies. However, these facts do not change Insureds' incorrect contention that MIGA is estopped from denying Insureds' claims under the Act or has waived such defense.

"Estoppel arises from the unfairness of permitting a party to assert rights belatedly if it knew of those rights but took no steps to enforce them until the other party has, in good faith, become disadvantaged by changed conditions." *Speedie Food Mart, Inc. v. Taylor,* 809 S.W.2d 126, 131 (Mo.App.1991). Waiver is an intentional relinquishment or abandonment of a known right or privilege, but no one can be bound by waiver unless it was made with full knowledge of the rights intended to be waived. *Cameron v. Norfolk and Western Railway,* 891 S.W.2d 495, 500 (Mo.App.1994).

In their petition, Insureds did not allege that MIGA knew that Insureds did not qualify as "insureds" under the Act. In absence of such an allegation, Insureds do not allege all the necessary elements to maintain a cause of action under the theory of estoppel.

Furthermore, MIGA did not waive its defense to deny Insureds' claims as not covered under the Act because the Act establishes who is covered by MIGA. Insureds did not allege that MIGA knew that Insureds were not covered by the Act and nonetheless agreed to cover their claims.

We restate that as a "nonprofit unincorporated legal entity" created purely by statute, MIGA's responsibilities for claims resulting from the insolvency of certain insurance companies is mandated by statute rather than by choice. *Pannell,* 595 S.W.2d at 352. Therefore, the limits of its liability are tightly drawn by the legislation which created it. *Id.*

MIGA's decision to deny Insureds' claims was based on the fact that Insureds were not covered under the Act. Accordingly, the trial court did not err in dismissing Insureds' claims of estoppel and waiver for failure to state a cause of action.

Similarly, the trial court did not err in dismissing Insureds' third count, which alleged breach of contract. Insureds argue that "[b]y demanding and accepting assessments from Bel–Aire based on Bel–Aire's total book of business, MIGA bound itself to satisfy Bel–Aire's obligation on the same book of business if Bel–Aire was ever declared insolvent." Insureds did not allege there was any oral or written contract between themselves and MIGA or Bel–Aire and MIGA regarding coverage upon insolvency of Bel–Aire, nor could MIGA have contracted outside the statutory limits of the Act.

It is well-settled under Missouri law that an agreement to act in violation of a statute is void and unenforceable. *Oliver v. Oklahoma Property & Casualty Insurance Guaranty Association,* 774 S.W.2d 902, 904 (Mo.App.1989). A valid and enforceable contract may not arise out of a transaction that is prohibited by statutory law. *Id.*

Insureds are not covered by the Act because they do not assert "covered claim[s]" as defined by § 375.772.2(2). MIGA correctly and legitimately refused to indemnify Insureds because coverage would have been in direct contravention of the statute to which MIGA is bound. Therefore, the trial court did not err in dismissing Insureds' third count because Insureds did not state a cause of action under a contract theory. Point denied.

The judgment of the trial court is affirmed.

CRAHAN, P.J., and GRIMM, J., concur.