60 Cal.App.4th 548 (1997)
INDUSTRIAL INDEMNITY COMPANY, Petitioner,
v.
WORKERS' COMPENSATION APPEALS BOARD and CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Respondents. STATE COMPENSATION INSURANCE FUND, Petitioner,
v.
WORKERS' COMPENSATION APPEALS BOARD and CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Respondents.
Docket Nos. D028509, D028762.
Court of Appeals of California, Fourth District, Division One.
December 29, 1997.
*551 COUNSEL
Finnegan, Marks & Hampton, Michael A. Marks and Ellen Sims Langille for Petitioner in No. D028509.
Haworth, Bradshaw, Stallknecht & Barber and C. Gordon Taylor as Amici Curiae on behalf of Petitioner in No. D028509.
Krimen, Da Silva, Daneri, Bloom & Landsiedel and Louis Harris for Petitioner in No. D028762.
Jones, Nelson, Screeton & Evidon and Richard E. Guilford for Respondents.
OPINION
KREMER, P.J. 

I

INTRODUCTION
California Insurance Guarantee Association (CIGA), a statutorily created involuntary unincorporated association of California-admitted insurers, was formed to provide insureds with financial and legal assistance if their insurers become insolvent.[1]
The workers' compensation referee (WCR) assessed an award against Industrial Indemnity Company (Industrial), State Compensation Insurance Fund (SCIF), and CIGA proportionate to periods of coverage by Industrial, SCIF, and insolvent Pacific States Casualty Company (Pacific). The Workers' Compensation Appeals Board (Board) rescinded the WCR's award against CIGA and substituted a joint and several award against Industrial and SCIF.
In these consolidated matters, petitioners Industrial and SCIF challenge the Board's award. Concluding the Board correctly rescinded the award *552 against CIGA and properly imposed joint and several liability on Industrial and SCIF, we affirm the Board's award.

II

FACTUAL AND PROCEDURAL BACKGROUND
Machine handler Alvaro Garcia filed a workers' compensation claim for cumulative injury sustained on the job during the period from November 6, 1990, through November 6, 1991. During that time Garcia's employer had successive workers' compensation coverage with Industrial (November 6, 1990, through June 30, 1991), Pacific (July 1, 1991, through October 26, 1991) and SCIF (October 27, 1991, through November 6, 1991).
Before trial of Garcia's claim, Pacific became insolvent and was placed into liquidation by the Insurance Commissioner. CIGA entered the litigation due to Pacific's insolvency and sought dismissal from the case on the ground Garcia's claim did not constitute a "covered claim" under Insurance Code section 1063.1, subdivision (c)(9), because "other" workers' compensation insurance was available through jointly and severally liable Industrial and SCIF. The WCR denied CIGA's request for dismissal and issued awards favoring Garcia proportionate to time of coverage, to wit, Industrial 64.7 percent, CIGA for Pacific 32.3 percent, and SCIF 3 percent.
Seeking reconsideration by the Board, CIGA asserted a joint and several award should be issued against Industrial and SCIF. CIGA also asserted it could not be held responsible for any portion of Garcia's cumulative trauma award because other insurance was available to cover the entire award as Industrial and SCIF were jointly and severally liable.
Upon reconsideration, the Board rescinded the WCR's award and substituted a joint and several award against Industrial and SCIF. In absolving CIGA from any liability, the Board concluded (1) CIGA was only required to pay "covered claims"; (2) "covered claims" did not include claims covered by other insurance available to the claimant or insured (Ins. Code, § 1063.1, subd. (c)(9)); and (3) Garcia's claim was covered by other insurance since all carriers during Garcia's period of exposure were jointly and severally liable for benefits to an employee for cumulative trauma (Lab. Code, § 5500.5, codifying Colonial Ins. Co. v. Industrial Acc. Com. (1946) 29 Cal.2d 79 [172 P.2d 884]).

*553 III

DISCUSSION
Industrial and SCIF contend the Board erred in concluding that all benefit awards in cumulative trauma cases against more than one employer and/or one carrier must be joint and several. Industrial and SCIF further contend the Board erred in concluding CIGA need not pay insolvent insurer Pacific's proportionate liability for Garcia's cumulative trauma injury. Industrial asserts that absent an election by Garcia under Labor Code section 5500.5, subdivision (c), CIGA was required to pay its proportionate share on behalf of Pacific.[2]
In essence, this case poses the question: Where solvent workers' compensation insurance carriers are adjudicated liable to a cumulatively injured employee, is CIGA also liable? As we shall explain, the answer is no.

A

Joint and Several Liability
(1) Industrial and SCIF contend a joint and several award was not authorized on Garcia's cumulative trauma claim since Garcia assertedly failed to make an election under Labor Code section 5500.5, subdivision (c), to proceed against fewer than all defendants. Similarly, CWCI contends that joint and several liability may generally be imposed only if the employee elects to proceed against more than one defendant but fewer than all defendants joined in the action.[3] We disagree.
Labor Code section 5500.5, subdivision (c), provides in relevant part: "In any case involving a claim of occupational disease or cumulative injury occurring as a result of more than one employment within the appropriate time period ... the employee making the claim ... may elect to proceed against any one or more of the employers. Where such an election is made, the employee must successfully prove his or her claim against any one of the employers named, and any award which the appeals board shall issue awarding compensation benefits shall be a joint and several award as against any two or more employers who may be held liable for compensation benefits."
*554 Labor Code section 5500.5 "governs the procedure to be employed in cases where an employee suffers either an occupational disease or a cumulative injury. Section 5500.5 is a codification of the Supreme Court's decision in Colonial Ins. Co. v. Industrial Acc. Com. (1946) 29 Cal.2d 79 [172 P.2d 884]." (General Accident Ins. Co. v. Workers' Comp. Appeals Bd. (1996) 47 Cal. App.4th 1141, 1145 [55 Cal. Rptr.2d 272], citing City of Torrance v. Workers' Comp. Appeals Bd. (1982) 32 Cal.3d 371, 374-375 [185 Cal. Rptr. 645, 650 P.2d 1162]; also Flesher v. Workers' Comp. Appeals Bd. (1979) 23 Cal.3d 322, 327 [152 Cal. Rptr. 459, 590 P.2d 35].)
In Colonial Ins. Co. v. Industrial Acc. Com., supra, 29 Cal.2d 79 (Colonial), the Supreme Court concluded that in cases involving progressive occupational diseases, "the employee may, at his option, obtain an award for the entire disability against any one or more of successive employers or successive insurance carriers if the disease and disability were contributed to by the employment furnished by the employer chosen or during the period covered by the insurance even though the particular employment is not the sole cause of the disability." (Id. at p. 82, italics added.) The Supreme Court reasoned: "To require an employee disabled with such a disease to fix upon each of the carriers or employers the precise portion of the disability attributable to its contribution to the cause of the malady is not in consonance with the required liberal interpretation and application of the workmen's compensation laws. The successive carriers or employers should properly have the burden of adjusting the share that each should bear and that should be done by them in an independent proceeding between themselves. They are in a better position to produce evidence on the subject and establish the proper apportionment. All of them may have contributed to the disability and the employee should be permitted to proceed against and have an award against any or all of them for the whole disability if the evidence discloses that he was exposed to [the cause of his malady] during his period of employment with each of the employers named." (Ibid., italics added.) Similarly, in Fireman's Fund Indem. Co. v. Ind. Acc. Com. (1952) 39 Cal.2d 831 [250 P.2d 148], the Supreme Court observed: "The commission found petitioner jointly and severally liable with the other insurance carrier. This finding is correct so far as the employee is concerned, since he should not be required to fix the precise portion of the disability attributable to each period of exposure." (Id. at p. 835.)[4]
In Flesher v. Workers' Comp. Appeals Bd., supra, 23 Cal.3d 322 (Flesher), the Supreme Court characterized the Colonial rule codified in Labor Code *555 section 5500.5 as providing that "... an employee disabled by a progressive occupational disease may obtain an award for his entire disability against any one or more of his successive employers or insurance carriers and that those held liable have the burden of seeking apportionment." (Flesher, supra, at p. 327, italics added.) The Supreme Court noted that as originally enacted in 1951, "... section 5500.5 was limited by its express language to occupational disease claims, but its procedures were applied by analogy to cumulative injury claims as well. [Citations.] In 1973, section 5500.5 was amended to expressly cover cumulative injury as well as occupational disease claims. [Citation.] At the same time it was also amended to limit the employers against whom compensation could be sought to those who had employed the applicant during the preceding five-year period. [Citation.] In 1977, section 5500.5 was amended to reduce the five-year period to a one-year period by 1981." (Ibid.)
In essence, consonant with the purpose of the workers' compensation statutory scheme, the Supreme Court decisions in Colonial and Flesher expanded the employee's procedural alternatives by recognizing the employee's right to a full award even if the employee opted to proceed against fewer than all successive employers or successive insurers. Labor Code section 5500.5, subdivision (c), simply codified such right to opt. Contrary to Industrial's contention that section 5500.5 clearly evinces a legislative determination that joint and several awards are permissible only in specified instances of cumulative trauma cases, nothing in the statute indicates any intent to condition the joint and several liability of multiple defendants upon the employee's "election" or otherwise preclude an employee from obtaining a joint and several award where all carriers participate as defendants in the proceedings.
Our conclusion is consistent with Marsh v. Workmen's Comp. App. Bd. (1968) 257 Cal. App.2d 574 [65 Cal. Rptr. 69]. In Marsh the employee's survivors sought death benefits from four insurance companies, apparently constituting all the employer's workers' compensation carriers during the relevant periods. The appellate court observed: "`It is the established rule in cases where disability or death results to an employee from a progressive occupational disease or cumulative industrial injury that the employee (or his dependents) may elect to recover full compensation benefits from any employer (or insurer) in the chain of causation and that the appeals board must thereafter apportion the liability among the successive employers (or insurers) in the proportion that each period of employment (or correspondent *556 coverage) contributed.' [Citations.] The proper procedure in such cases is to hold the employers (or carriers) in the chain of causation jointly and severally liable, leaving them to debate the issue of apportionment of their relative liabilities in a separate proceeding. There can be no apportionment as to the claimant and there is no reason he should be required to wait until the determination of the apportionment issue to receive his award." (Id. at pp. 578-579, italics added.)
Finally, we observe that consistent with the express language of Labor Code section 5500.5, subdivision (c), Garcia in fact made an election to proceed against "one or more" of his employer's workers' compensation insurers, in this instance all such carriers. Garcia successfully proved his claim against those carriers elected. Thus, the award was required to be joint and several by case law and by statute.
In sum, Garcia's employer and more than one solvent carrier were found liable for Garcia's single cumulative injury. Each such carrier was obligated to discharge fully the employer's liability to Garcia for his entire disability during the cumulative injury period. Hence, the Board properly ordered a joint and several award against Industrial and SCIF.

B

Apportionment of Liability
(2a) Industrial contends no statutory basis existed for relieving CIGA of its asserted obligation to make payments on behalf of liable but insolvent insurer Pacific. We disagree.
(3) "CIGA was created by legislation in 1969 [citation] to establish a fund from which insureds could obtain financial and legal assistance in the event their insurers become insolvent, i.e. `to provide insurance against "loss arising from the failure of an insolvent insurer to discharge its obligations under its insurance policies." [Citation.]'" (Isaacson v. California Ins. Guarantee Assn., supra, 44 Cal.3d at p. 784.) "CIGA is not, and was not created to act as, an ordinary insurance company. [Citation.] It is a statutory entity that depends on the Guarantee Act for its existence and for a definition of the scope of its powers, duties, and protections." (Id. at p. 786.) "CIGA issues no policies, collects no premiums, makes no profits, and assumes no contractual obligations to the insureds." (Id. at p. 787.) "CIGA's duties are not coextensive with the duties owed by the insolvent insurer under its policy." (R.J. Reynolds Co. v. California Ins. Guarantee Assn., supra, 235 Cal. App.3d at p. 601.) Instead, CIGA's authority and liability in discharging "its statutorily circumscribed duties" are limited to paying the amount of "covered *557 claims." (Isaacson v. California Ins. Guarantee Assn., supra, at p. 786; Ins. Code, § 1063.1, subd. (a).) CIGA "is authorized by statute to pay only `covered claims' of an insolvent insurer, those determined by the Legislature to be in keeping with the goal of providing protection for the insured public. ([Ins. Code,] § 1063.2, subd. (a).)" (R.J. Reynolds Co. v. California Ins. Guarantee Assn., supra, at p. 600.) CIGA has the statutory authority to "deny a noncovered claim." (Ins. Code, § 1063.2, subd. (b).)
"Since `covered claims' are not coextensive with an insolvent insurer's obligations under its policies, CIGA cannot and does not `"stand in the shoes" of the insolvent insurer for all purposes.' [Citation.] Indeed, CIGA is `expressly forbidden' to do so except where the claim at issue is a `covered claim.' [Citation.] It necessarily follows that CIGA's first duty is to determine whether a claim placed before it is a `covered claim.'" (Saylin v. California Ins. Guarantee Assn., supra, 179 Cal. App.3d at p. 262.) "It is unequivocally clear the scope of CIGA's rights and duties turns on the definition of `covered claim.'" (Ibid.)
(2b) Insurance Code section 1063.1, subdivision (c)(1), defines "[c]overed claims" as "the obligations of an insolvent insurer ... imposed by law and within the coverage of an insurance policy of the insolvent insurer ... which were unpaid by the insolvent insurer ... for which the assets of the insolvent insurer are insufficient to discharge in full [and] in the case of a policy of workers' compensation insurance, to provide workers' compensation benefits under the workers' compensation law of this state...." The statute then proceeds to enumerate in subdivision (c)(2) through (c)(12) specific types of claims not constituting "covered claims."
Subdivision (c)(9) of Insurance Code section 1063.1 provides: "`Covered claims' shall not include (i) any claim to the extent it is covered by any other insurance of a class covered by the provisions of this article available to the claimant or insured...."[5] "Cases interpreting this language have established that where an insured has overlapping insurance polices and one insurer becomes insolvent, the other insurer, even if only a secondary or excess insurer, is responsible for paying the claim. In other words, CIGA is an insurer of last resort and does not assume responsibility for claims where there is any other insurance available." (R.J. Reynolds Co. v. California Ins. Guarantee Assn., supra, 235 Cal. App.3d at p. 600, italics added.) However, asserting solvent insurers Industrial and SCIF provided coverage for Garcia's employer during a different time period than insolvent carrier Pacific, *558 Industrial contends cases such as R.J. Reynolds Co. v. California Ins. Guarantee Assn., supra, are distinguishable as involving multiple policies with coverages overlapping in time. Hence, contending no "other insurance" covering the same time period as Pacific's policy was available to allow dismissal of CIGA under Insurance Code section 1063.1, subdivision (c)(9), Industrial concludes the WCR correctly assigned proportionate liability among the insurance carriers providing Garcia's employer with coverage during the liability year.[6] We disagree.
CIGA's "statutory duty" is to provide "insolvency insurance to pay some (but not all) claims arising out of an insurance policy of an insolvent insurer." (Interstate Fire & Casualty Ins. Co. v. California Ins. Guarantee Assn., supra, 125 Cal. App.3d at p. 908, italics added.) Further, in creating CIGA, the Legislature "chose to provide a limited form of protection for the public, not a fund for the protection of other insurance companies from the insolvencies of fellow members." (California Union Ins. Co. v. Central National Ins. Co., supra, 117 Cal. App.3d at p. 734; accord, Isaacson v. California Ins. Guarantee Assn., supra, 44 Cal.3d at p. 785; Central National Ins. Co. v. California Ins. Guarantee Assn. (1985) 165 Cal. App.3d 453, 458 [211 Cal. Rptr. 435]; Interstate Fire & Casualty Ins. Co. v. California Ins. Guarantee Assn., supra, at pp. 909-910, 912.) Accordingly, as noted by one appellate court, various subdivisions of Insurance Code section 1063.1 express the "statutory intent not to use CIGA funds to pay the insolvent's obligations to other insurers...." (Interstate Fire & Casualty Ins. Co. v. California Ins. Guarantee Assn., supra, at p. 909; see, e.g., Ins. Code, § 1063.1, subd. (c)(4).[7])
Similarly, subdivision (c)(9) of Insurance Code section 1063.1 also reflects the statutory intent not to use CIGA funds to pay an insolvent insurer's potential obligations to solvent insurers. Reasonably read, the statute indicates that a claim does not rise to the level of a "covered claim" where other insurance providing the required coverage is available to either the claimant or the insured. Here, solvent insurers Industrial and SCIF provided coverage to Garcia's employer during the liability period for cumulative injury prescribed in Labor Code section 5500.5, subdivision (a). Garcia proved his *559 cumulative injury against his employer, Industrial and SCIF. Hence, even though Garcia's employer's three workers' compensation policies did not overlap chronologically, Industrial and SCIF were jointly and severally liable to Garcia for his entire disability during the statutory liability period. (City of Torrance v. Workers' Comp. Appeals Bd., supra, 32 Cal.3d at pp. 374-375; Fireman's Fund Indem. Co. v. Ind. Acc. Com., supra, 39 Cal.2d at p. 835; Flesher, supra, 23 Cal.3d at p. 327; Colonial, supra, 29 Cal.2d at p. 82; General Accident Ins. Co. v. Workers' Comp. Appeals Bd., supra, 47 Cal. App.4th at p. 1145; Marsh v. Workmen's Comp. App. Bd., supra, 257 Cal. App.2d at pp. 578-579; Lab. Code, § 5500.5, subd. (c).) Since such "other insurance" provided by Industrial and SCIF was thus available to cover Garcia's benefit award, CIGA was statutorily prohibited from making any payment toward his award. (Ins. Code, § 1063.1, subd. (c)(9).)
In sum, the Legislature did not intend CIGA to defray or diminish the responsibility of other carriers. Instead, the Legislature intended CIGA to benefit claimants otherwise unable to obtain insurance in payment of their claims. Here, insurance other than insolvent Pacific's policy was available to satisfy the employer's liability to Garcia, to wit, the policies of solvent carriers Industrial and SCIF. Garcia had the substantive right to collect his entire benefit award from Industrial and SCIF since each was jointly and severally liable. Since Garcia's benefits claim was fully protected by solvent insurers Industrial and SCIF, both Garcia and his employer had "other insurance" available within the meaning of Insurance Code section 1063.1, subdivision (c). Hence, the award favoring Garcia against Industrial and SCIF did not constitute a statutorily defined "Covered claim." (Id. at subd. (c)(9).) Accordingly, the Board properly determined CIGA had no statutory liability for any portion of Garcia's award.[8]

C

Other Contentions

(i)
Citing a statutory provision prohibiting an employee from electing to proceed against an illegally uninsured employer in a claim of occupational *560 disease or cumulative injury (Lab. Code, § 3716, subd. (b)), Industrial and SCIF note that Labor Code section 5500.5, subdivision (c), does not contain any "corresponding provision" forbidding the employee from electing to proceed against CIGA or otherwise allowing CIGA to "escape liability." However, contrary to the contention of Industrial and SCIF, Labor Code section 3716, subdivision (b)'s limitation on proceedings under the independent statutory scheme involving uninsured employers has no bearing on the meaning of Labor Code section 5500.5, subdivision (c). Moreover, as discussed, the basis for CIGA's freedom from liability to Garcia is Insurance Code section 1063.1, subdivision (c)(9), not Labor Code section 5500.5, subdivision (c).

(ii)
CWCI contends the statutory interpretation underlying the Board's holding "will frequently lead to inconsistent and absurd results" in situations involving self-insurers or settlements. However, CWCI's contention goes beyond the circumstances presented on this record and is essentially speculation. Such contention would more appropriately be addressed to the Legislature.

D

Conclusion
The Board correctly rescinded the award against CIGA and properly imposed joint and several liability on Industrial and SCIF.

IV

DISPOSITION
The order of the Board rescinding the workers' compensation referee's award and substituting its own award is affirmed.
Work, J., and McDonald, J., concurred.
NOTES
[1] (Ins. Code, § 1063 et seq.; Isaacson v. California Ins. Guarantee Assn. (1988) 44 Cal.3d 775, 784-786 [244 Cal. Rptr. 655, 750 P.2d 297]; R.J. Reynolds Co. v. California Ins. Guarantee Assn. (1991) 235 Cal. App.3d 595, 597-600 [1 Cal. Rptr.2d 405]; Saylin v. California Ins. Guarantee Assn. (1986) 179 Cal. App.3d 256, 261-262 [224 Cal. Rptr. 493]; Ross v. Canadian Indemnity Ins. Co. (1983) 142 Cal. App.3d 396, 399 [191 Cal. Rptr. 99]; E.L. White, Inc. v. City of Huntington Beach (1982) 138 Cal. App.3d 366, 370 [187 Cal. Rptr. 879]; Interstate Fire & Casualty Ins. Co. v. California Ins. Guarantee Assn. (1981) 125 Cal. App.3d 904, 908 [178 Cal. Rptr. 673]; California Union Ins. Co. v. Central National Ins. Co. (1981) 117 Cal. App.3d 729, 731, 734 [173 Cal. Rptr. 35].)
[2] California Workers' Compensation Institute (CWCI) has filed an amicus curiae brief in support of Industrial.
[3] Industrial and CWCI note a joint and several award is proper where an occupational disease involves silicotic exposure during underground mining operation employment. (Lab. Code, § 5500.5, subd. (f).)
[4] In Fireman's Fund Indem. Co. v. Ind. Acc. Com., supra, 39 Cal.2d 831, the Supreme Court further stated, "[A]s between the two insurance carriers of the single employer who employed the injured employee during the entire period of exposure, we are of the opinion that a proper apportionment of the award, based on the various factors leading to the disability, should be made in a separate proceeding in a manner similar to that prescribed for apportioning an award as between successive carriers or employers in cases involving occupational diseases." (Id. at p. 835.)
[5] Workers' compensation insurance is a class of insurance covered by the provisions of the CIGA statutes. (Ins. Code, § 1063, subd. (a).)
[6] In determining that Insurance Code section 1063.1, subdivision (c)(9), was "not applicable," the WCR stated: "The other insurance in this case does not cover the period insured by Pacific States Casualty Company. The period from July 1, 1991 through October 26, 1991, is covered by Pacific States Casualty Company only. Any liability that Industrial Indemnity and State Compensation Insurance Fund insure is for their particular share of the cumulative trauma under their policies of insurance."
[7] Insurance Code section 1063.1, subdivision (c)(4), provides in relevant part: "`Covered claims' shall not include any obligations to insurers, insurance pools, or underwriting associations, nor their claims for contribution, indemnity, or subrogation, equitable or otherwise...."
[8] We note that if Garcia had elected to proceed only against Industrial and succeeded in proving his cumulative injury, he would have received an award for all his benefits and Industrial would have been obligated to pay the entire award. Although Industrial would have had the right to institute supplemental proceedings against other carriers for contribution (Lab. Code, § 5500.5, subds. (c) & (e)), such proceedings would not lie against CIGA due to Insurance Code section 1063.1, subdivision (c)(4). (E.L. White, Inc. v. City of Huntington Beach, supra, 138 Cal. App.3d at pp. 370-372.)